PRO-COMP MANAGEMENT, INC., The DLJ Wright Industries, Inc. and Amedistaf, LLC  *v*.  R.K. ENTERPRISES, LLC, Katherine Hefley, Mary Burks, Traca Lane, and Raymond Hefley

05-459                                                      237 S.W.3d 20

Supreme Court of Arkansas
Opinion delivered June 1, 2006

464

*Gilker & Jones, A Professional Association*, by: *Paul Alvin Gilker*, for appellants.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Hermann Ivester* and *Margaret A. Johnston*, for appellees.

J IM HANNAH, Chief Justice. Pro-Comp Management, Inc., d/b/a The Right Solutions, an Arkansas corporation, The

D.L.J. Wright Industry, Inc., d/b/a The Right Solutions, an Oklahoma corporation, and Amedistaf, L.L.C., d/b/a The Right Solutions, a Delaware corporation, (TRS) appeal a decision of the Washington County Circuit Court entering upon remand a judgment in favor of R.K. Enterprises, L.L.C., d/b/a Nationwide Nurses, a Nevada corporation, Katherine Hefly, Mary Burks, Traca Lane, and Raymond Hefly. The appellees cross-appeal, alleging that this court lacked jurisdiction to remand the case for a determination of damages under the Trade Secrets Act.[1] The decision on the prior appeal in this case is *R.K. Enterprise, L.L.C. v. Pro-Comp Management, Inc.*, 356 Ark. 565, 158 S.W.3d 685 (2004) (*R.K. I*). Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(7) because this is the second appeal in this case.

### Jurisdiction

Although the issue of jurisdiction is raised by appellees on cross-appeal, we address the issue of jurisdiction first because appellees allege that this court exceeded its jurisdiction in remanding the case for a determination of damages in *R.K. I* under the Trade Secrets Act. Appellees further allege that because this court lacked jurisdiction to issue the decision in *R.K. I*, it now lacks jurisdiction to hear any further appeal arising from that decision.

Appellees' argument is that only Katherine Hefly, Mary Burks, and Traca Lane were found to have acquired and removed trade secrets from TRS; therefore, Nationwide and Raymond Hefly could not be liable under the Trade Secrets Act. However, the circuit court also found that Nationwide benefitted from the misappropriation, meaning that Nationwide used the illegally obtained trade secrets. Use of a misappropriated trade secret gives rise to liability under Ark. Code Ann. § 4-75-601(2)(B) (Repl. 2001). Thus, there is a finding that Nationwide is liable. Raymond Hefly is likewise liable as he ran the business and was the person who used the trade secrets to further Nationwide's business.

Appellee's cross-appeal alleges that this court lacked jurisdiction to remand the case in *R.K. I* for a determination of damages under the Trade Secrets Act because TRS did not cross-appeal in *R.K. I*. They argue that by making the election of remedies at trial for those offered under conversion and con-

---

[1] Ark. Code Ann. § 4-75-606 (Repl. 2001).

spiracy, there was a ruling by the circuit court that TRS failed to appeal in *R.K. I,* and that circuit court ruling now controls under the law of the case doctrine. This, appellees argue, means that this court lacked jurisdiction to reverse this case and remand it for relief benefitting TRS. The principle of the law of the case is that, "[w]hen there is no cross-appeal, the order from which cross-appeal is not taken becomes the law of the case." *Clemmons v. Office of Child Support Enforcement,* 345 Ark. 330, 351, 47 S.W.3d 227, 241 (2001). However, what was at issue on appeal in *R.K. I* was whether the circuit court erred in deciding the case on conversion and conspiracy. This court held that appellees were correct, that the circuit court erred, and we reversed and remanded the case for a determination of damages under the Trade Secrets Act, the other remaining theory of liability argued at trial. Appellees rely on the election of remedies by TRS to serve as the reason law of the case must apply. However, the doctrine of election of remedies applies to remedies, not to causes of action, and bars more than one recovery on inconsistent remedies. *Regions Bank v. Griffin,* 364 Ark. 193, 217 S.W.3d 829 (2005). Here the remedy sought, recovery under conversion and conspiracy, was a remedy that was not available under this set of facts. Therefore, there could be no election between remedies and upon remand the circuit court was to consider the only available remedy, a determination of damages under the Trade Secrets Act.

### Violation of the Mandate Rule

TRS argues that the circuit court violated the mandate rule as evidenced by reconsideration of the judgment entered in favor of TRS and entry of a judgment in favor of appellees. A lower court is bound by the judgment or decree of a higher court as law of the case and must carry the decision of the higher court into execution pursuant to the mandate issued by that court. *Smith v. AJ&K Operating Co.,* 365 Ark. 229, 227 S.W.3d 899 (2006). The lower court may not vary the decision or judicially examine it for any purpose other than execution. *Id.* A lower court may not vary the relief granted in the mandate and may not intermeddle even where there is apparent error in the mandate. *Id.*

TRS argues that in entering judgment in favor of appellees, the circuit court altered its previous factual finding of liability against appellees. The record fails to support this conclusion. The order issued upon remand clearly indicates that what was

at issue on remand was "a determination of damages under the statutory provisions of the Arkansas Trade Secrets Act. . . ." Further, the order upon remand reaffirms the earlier finding that appellees misappropriated and used trade secrets in violation of the Trade Secrets Act. Entry of judgment in favor of appellees merely reflected the circuit court's conclusion that TRS failed to prove its damages.

### Actual Loss and Unjust Enrichment

■ TRS argues that the circuit court erred in failing to award damages upon remand. In *R.K. I*, this court held that "the Trade Secrets Act prescribes an exclusive remedy for misappropriation of trade secrets. . . ." *R.K. I*, 356 Ark. at 568, 158 S.W.3d at 686. This court also held that "the statutory language of the Trade Secrets Act displaces or preempts the award of damages based upon tort claims for conversion of trade secrets, as well as other tort claims such as conspiracy, that may arise under a claim of misappropriation of trade secrets." *R.K. I*, 356 Ark. at 574, 158 S.W.3d at 690. Section 4-75-606 (Repl. 2001) provides:

> (a) In addition to or in lieu of injunctive relief, a complainant may recover damages for the actual loss caused by misappropriation.
>
> (b) A complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss.

In *R.K. I*, we stated that actual loss noted in the statute is calculated as "the plaintiff's lost profits or the defendant's gain, 'whichever affords the greater recovery.' " *R.K. I*, 356 Ark. at 575, 158 S.W.3d at 690 (quoting *Saforo & Assocs., Inc. v. Porocel Corp.*, 337 Ark. 553, 566, 991 S.W.2d 117, 124 (1999)). We then noted that while the circuit court had determined that the market value of the trade secrets was $262,303, "[t]he abstract before us does not establish TRS's lost profits or Nationwide's gains resulting from the misappropriation of trade secrets." *R.K. I*, 356 Ark. at 575, 158 S.W.3d at 691. We also stated that the "computation of damages did not address the measure of lost profits suffered by TRS or the gain realized by appellants as a result of the misappropriation of trade secrets as required by Ark. Code Ann. § 4-75-606." *Id.* We stated in conclusion:

> The abstract before us does not reflect a determination of the issues relating to disgorgement of profits by Nationwide or the recovery

> of TRS's lost profits, whichever affords the greater recovery, as articulated in Ark. Code Ann. § 4-75-606 and *Saforo, supra*. Accordingly, we reverse and remand for a determination of damages under the statutory provisions of our Trade Secrets Act.

*R.K. I*, 356 Ark. at 576, 158 S.W.3d at 691. This court noted in *R.K. I*, that "Arkansas Code Annotated § 4-75-606 includes the recovery of actual loss plus any unjust enrichment when the misappropriation of trade secrets is involved." *R.K. I*, 356 Ark. at 575, 158 S.W.3d at 690. Upon remand, the circuit court considered damages based on both actual loss as well as unjust enrichment. The circuit court found that although liability for misappropriation of trade secrets had been proven, the evidence presented on both theories of recovery was too speculative to prove damages; therefore, the circuit court entered a judgment for the appellees. We recognized a weakness in the proof on damages in *R.K. I* with respect to actual loss, when we stated that the abstract presented on appeal did not establish either TRS's lost profits or Nationwide's gains. It appears that upon remand, no better evidence was established; therefore, no recovery could be granted on this theory.

■ With respect to unjust enrichment, the circuit court relied on *Brown v. Ruallam*, 73 Ark. App. 296, 44 S.W.3d 740 (2001). *Brown* was on point and declared the law with respect to unjust enrichment under the Trade Secrets Act. Thus, being bound to follow precedent, the circuit court could not look to more general law on unjust enrichment. In *Brown*, the court of appeals relied on *Saforo, supra,* and concluded that unjust enrichment in the context of the Arkansas Trade Secrets Act "must mean the benefit conferred upon the defendant by the profit margin earned was a result of the wrongful taking of trade secrets." *Brown*, 73 Ark. App. at 302, 44 S.W.3d at 745. In *Saforo*, we noted that recovery under the Trade Secrets Act included both actual loss and unjust enrichment. While we mentioned unjust enrichment in *Saforo*, the issue in that case and the matter discussed and decided was the meaning of actual loss. The conclusion in *Brown* that unjust enrichment must be defined solely through analysis of profits is incorrect. Pursuant to section 4-75-606(b), a complainant may recover not only for the actual loss as may be shown by profits, but also the unjust enrichment caused by misappropriation where that

is not taken into account in computing damages for actual loss. To the extent that *Brown* is inconsistent with this opinion, it is overruled.

The circuit court may look to more general law on unjust enrichment. For example, in *Servewell Plumbing v. Summit Contractors*, 362 Ark. 598, 612, 210 S.W.3d 101, 112 (2005), we stated that:

> Unjust enrichment is an equitable doctrine. *First Nat'l Bank of DeWitt v. Cruthis*, 360 Ark. 528, 203 S.W.3d 88 (2005). It is the principle that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly.

The circuit court found overwhelming evidence that Katherine Hefly, Mary Burks, and Traca Lane misappropriated the trade secrets. The circuit court also found that the trade secrets were used to some extent by Nationwide and Raymond Hefly in setting up the business before the offices of Nationwide were searched and the trade secrets taken by police. Misappropriation of a trade secret includes use of a trade secret taken by another. Ark. Code Ann. § 4-75-601(2)(B).

At trial, damages were awarded under conversion, and the fair market price of the trade secrets was determined to be a total of $262,303. Whether the evidence giving rise to the award of damages on conversion may be relevant on the issue of unjust enrichment has not been decided by the circuit court. Given the required reliance on *Brown, supra*, the circuit court on remand was not able to fully consider the issue of damages under unjust enrichment.

The decision reached by the circuit court on remand on actual loss under the Trade Secrets Act is affirmed. However, we reverse and remand for a decision on damages under unjust enrichment.

TRS also argues that the circuit court erred in failing to award attorney's fees as allowed for willful or malicious misappropriation under Ark. Code Ann. § 4-75-607 (Repl. 2001). The order appealed from contains no reference to attorney's fees. TRS

failed to obtain a ruling on this issue. The failure to obtain a ruling precludes appellate review because there is no order of a lower court on the issue for this court to review on appeal. *See Gwin v. Daniels*, 357 Ark. 623, 892 S.W.2d 526 (2004).

Affirmed in part, reversed and remanded in part.

BROWN, DICKEY and GUNTER, JJ., concur in part and dissent in part.

R OBERT L. BROWN, Justice, concurring in part and dissenting in part. I agree with the majority that the circuit court concluded that it was bound by the Court of Appeals' decision in *Brown v. Ruallam*, 73 Ark. App. 296, 44 S.W.3d 740 (2001), a decision that incorrectly interpreted our analysis in *Saforo & Assocs., Inc. v. Porocel Corp.*, 337 Ark. 553, 991 S.W.2d 117 (1999). The Trade Secrets Act specifically allows for an award of damages for unjust enrichment under Ark. Code Ann. § 4-75-606(b) that is *in addition to* the amount recovered for actual loss under Ark. Code Ann. § 4-75-606(a). The *Brown* decision improperly conflated the two damage awards. Accordingly, I concur in overturning that portion of *Brown* which is inconsistent with the statute and our case law. I also agree that this case should be remanded to the circuit court for a determination of damages for unjust enrichment. However, I disagree that the plaintiffs are not also entitled to an award of damages for actual loss under Ark. Code Ann. § 4-75-606(a). For that reason, I dissent in part.

In the circuit court's first order, the court clearly determined that the defendants had misappropriated plaintiffs' trade secrets and that plaintiffs had been damaged as a result. In that first order, the court said:

> Plaintiffs['] Exhibits #54 and #56 are the profit and loss statements for Nationwide Nurses from May 2001 through April 2002. They reflect total sales of $1,226,202.58, payroll expenses totaling $652,797.97, total nurse travel expenses of $202,123.43, and a net income for that period of time of $204,889.41. The Court finds that the balance sheet of Nationwide Nurses as of June 30, 2002, shows total accounts receivable of $255,067.00. The Court finds the total equity of Nationwide Nurses to be $229,228.32. *The Court finds that these profits and monies were generated in a very short period of time with the help of the information that was taken from TRS.*

(Emphasis added.) Under the plain language in the circuit court's first order, the damages for the misappropriation of trade secrets would have been the amount of Nationwide's profits, which was $229,228.32.

The circuit court also determined in its first order that the defendants were liable for the tort of common law conversion of those trade secrets, for which the court awarded the plaintiffs the fair market value of the converted personal property. The court determined that amount to be $262,312.00.[1] Because the plaintiffs elected to recover under the tort theory of conversion, the final judgment entered in their favor was $262,312.00.

In *R.K. Enter., L.L.C. v. Pro-Comp Mgmt., Inc.*, 356 Ark. 565, 158 S.W.3d 685 (2004) (*R.K. I*), this court reversed the damages award for conversion and held that the sole recovery was under the Trade Secrets Act. For that reason, we remanded the case back to the circuit court for a determination of damages under that Act. In our opinion, we said that the "abstract" that was before us did not reflect Nationwide's gains for misappropriation. While we were certainly correct in making the statement that the income data was not in the abstract, the data reflecting profits was included in the Addendum, as an attachment to the circuit court's order. Our statement, therefore, was misleading and understandably misled the circuit court. On remand, the circuit court relied on our opinion in finding that the damages for misappropriation of trade secrets could not be determined from the information it had before it despite the fact that the court had already made such a finding.

The circuit court, in its second order, found that "[t]here was sufficient evidence to show that Nationwide did avoid at least some of the initial start-up costs of . . . a travel nurse agency at the considerable expense of another." However, it also made the following findings:

> The Court cannot determine, with any specificity, what profits Nationwide earned during the time it possessed the information.

---

[1] The circuit court said the following regarding the damages awarded for each item converted:

> For the nurse databases, the Court awards the $68,882.00. For the conversion of the tests developed for verifying the competency of nurses, the Court awards $400.00. For the client/hospital lists, the Court awards $166,489.00. For the Staff Pro computer program, the Court awards $26,532.00.

> The first nurse Nationwide was able to put in the field was in June of 2002 after the information was seized by the Boone County Sheriff's Office via a search warrant based upon [a] criminal complaint. . . . The database, computer programs and other items taken from TRS were in custody of law enforcement for many months. . . . Thus, Nationwide logically could have no gain during the period of time it did not have access to the items seized. There is no way for this Court to determine the amount of profits or net gain Nationwide realized from the misappropriation for the time period at issue. It was simply not developed at trial.

Clearly, the circuit court could not alter its findings in the second order from the findings made in its first order as our mandate had issued and our remand in *R.K. I* was solely to determine damages under the Trade Secrets Act. *See R.K. I, supra; see also Dolphin v. Wilson*, 335 Ark. 113, 983 S.W.2d 113 (1998). The findings in the circuit court's first order control.

In short, it is clear to me that based on the circuit court's initial order, it had enough evidence before it to make a determination of actual loss for misappropriation of trade secrets under § 4-75-606(a). With clearer direction from this court and without reliance on *Brown*, the circuit court could make an appropriate finding of damages for actual loss in a second remand of this case for such a determination.

Any confusion surrounding this court's directions and the *Brown* decision should not preclude the plaintiffs from fully recovering what is rightfully owed to them for actual loss under the Trade Secrets Act. Because of this, I dissent from the majority's conclusion that the plaintiffs cannot fully recover their damages. I too would reverse the circuit court's decision, but I would remand the case for the circuit court to make a determination of damages for both actual loss under § 4-75-606(a) and for unjust enrichment under § 4-75-606(b) based on the evidence that was already before the court prior to our first remand.

For these reasons, I concur in part and dissent in part.

DICKEY and GUNTER, JJ., join this opinion.